```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF LOUISIANA
```

YOLANDE BURST, individually and              CIVIL ACTION
as a legal representative of
BERNARD ERNEST BURST, JR.

VERSUS                                       NO: 14-109

SHELL OIL COMPANY, et al.                    SECTION: R(2)

### ORDER AND REASONS

Plaintiff Yolande Burst moves for partial summary judgment on three issues: (1) whether, as a matter of general causation, benzene exposure can cause acute myeloid leukemia ("AML") in humans; (2) whether, before 1958, Defendants knew that benzene exposure could cause leukemia in humans; and (3) whether, before the late 1970s, Defendants failed to warn users that their products contained benzene and that benzene exposure could cause leukemia.[1] For the following reasons, the Court DENIES Plaintiff's motion in part and GRANTS it in part.

**I.   Background**

Plaintiff filed this products liability action against defendants Shell Oil Company, Chevron U.S.A. Inc. (as successor to Gulf Oil Corporation), and Texaco, Inc., invoking federal diversity jurisdiction.[2] She alleges that her late husband,

---

[1] R. Doc. 28.

[2] R. Doc. 1.

Bernard Burst, Jr., worked at various gas stations from 1958 through 1971, during which time he regularly used products "manufactured, supplied, distributed and sold" by Defendants.[3] Specifically, she alleges that "he would regularly use or come into contact with pure benzene or benzene-containing products including gasoline, diesel and other solvents."[4]

On June 20, 2013, Bernard Burst was diagnosed with AML.[5] He passed away as a result of the leukemia on December 21, 2013.[6]

Plaintiff alleges that her husband's regular exposure to benzene during the years he worked as a gas station attendant and mechanic caused his leukemia.[7] She claims that Defendants negligently manufactured and sold products containing benzene and that they negligently failed to warn foreseeable users of the health hazards associated with these products.[8] She additionally alleges strict products liability.[9]

---

[3] *Id.* at 3.

[4] *Id.*

[5] R. Doc. 28-5 at 18.

[6] R. Doc. 28-6.

[7] R. Doc. 1 at 5.

[8] *Id.* at 9.

[9] *Id.* at 10.

Plaintiff has submitted an affidavit from one of her husband's former co-workers.[10] The affidavit indicates that, as a gas station attendant and mechanic, Bernard Burst was regularly and frequently exposed to gasoline. At oral argument, Plaintiff's counsel clarified that Plaintiff is alleging that her husband was exposed to gasoline containing benzene, not to pure benzene.

## II. Summary Judgment Standard

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-399 (5th Cir. 2008). The Court must draw reasonable inferences in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985)

---

[10] R. Doc. 28-4.

(quoting 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 2738 (2d ed. 1983)).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence that would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quotation marks removed). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324.

The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *Id.; see also Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and

4

upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (quoting *Celotex*, 477 U.S. at 322).

### III. Discussion

A.  *Plaintiff Fails to Offer Necessary Expert Opinion Evidence on the Issue of General Causation.*

Plaintiff moves for partial summary judgment on three issues. First, she seeks summary judgment on the issue of general causation. *See Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) ("'General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury.'") (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W. 2d 706, 714 (Tex. 1997)). Under Louisiana law, "expert medical testimony is required when the conclusion regarding medical causation is one that is not within common knowledge." *Chavers v. Travis*, 902 So. 2d 389, 395 (La. Ct. App. 2005); *see Lasha v. Olin Corp.*, 625 So. 2d 1002, 1005 (La. 1993). Here, the question of whether exposure to gasoline and/or benzene can cause leukemia is not within common knowledge. Thus, expert medical testimony is required to resolve the issue of general causation.

5

Plaintiff frames the general causation question as whether benzene exposure can cause AML in humans.[11] Although she offers no expert opinion evidence on this issue, she points to a limited stipulation offered by Defendants that "very high levels of exposure to benzene over a long duration [a]re capable of causing some sub-types of acute myeloid leukemia."[12] She argues that, in light of this stipulation, the Court should grant summary judgment on the issue of general causation even in the absence of expert opinion evidence.[13]

Defendants, meanwhile, argue that the proper general causation question is whether exposure to gasoline, not benzene, can cause leukemia, because Plaintiff's husband "was exposed to *gasoline* manufactured, sold or supplied by Defendants."[14] While they concede that benzene exposure can, in certain circumstances, cause leukemia, they maintain that there is no established causal connection between exposure to gasoline, which contains a small amount of benzene, and development of leukemia.[15] Moreover, they assert that "[s]tudies have shown that concurrent exposure to gasoline actually *reduces* benzene toxicity. Thus, even if one

---

[11] R. Doc. 28-1 at 1, 4, 5.

[12] R. Doc. 44 at 6.

[13] R. Doc. 51 at 2, 4.

[14] R. Doc. 44 at 2 (emphasis in original).

[15] *Id.* at 8.

considers that there is a very small percentage of benzene in gasoline, it is not correct to simply assume that the benzene's effects are merely diluted."[16] They argue that Plaintiff's failure to offer any expert opinion evidence addressing a causal connection between exposure to gasoline and development of leukemia precludes summary judgment on the issue of general causation.[17]

The Court concludes that the proper general causation question in this case is whether exposure to gasoline containing benzene can cause leukemia, not whether exposure simply to benzene can cause leukemia. "[T]he burden with respect to general causation is to show that 'the substance at issue' is capable of causing the kind of harm alleged." *Watson v. Dillon Cos., Inc.*, 797 F. Supp. 2d 1138, 1152 (D. Co. 2011). Here, the substance to which Bernard Burst was allegedly exposed is gasoline, not pure benzene. *See Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1156 (E.D. Wa. 2009) ("This is a product's liability action and Defendant's product is gasoline."). Defendants have submitted an affidavit from Dr. David Pyatt, a toxicologist with 22 years' experience, who states that toxicological studies have indicated that "exposure to gasoline . . . results in a reduction of

---

[16] *Id.* at 12 (emphasis in original); *see* R. Doc. 44-2 at 8 (affidavit of Dr. David Pyatt).

[17] R. Doc. 44 at 3-5.

benzene toxicity" and that "exposures to benzene in a complex mixture such as gasoline are not necessarily comparable to those occurring as a result of using 'pure' or concentrated benzene."[18] Defendants have additionally submitted an affidavit from Dr. Ethan Natelson, a hematologist with 44 years' experience, who describes a "2013 review and meta-analysis with almost 100 citations of the most pertinent prior studies," which found no "strong and consistent association between occupational exposure to gasoline and lymphatic/hematopoietic cancers."[19] In light of this evidence, the Court cannot presume, on summary judgment, "that the qualitative toxic and carcinogenic effects of benzene from *any source* are the same." *Id.* (emphasis in original); *see McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1246 (11th Cir. 2005) (quoting *Rider v. Sandoz Pharm. Corp.*, 295 F.3d 1194, 1201 (11th Cir. 2002)) (quotation marks removed) ("[E]ven minor deviations in chemical structure can radically change a particular substance's properties and propensities.").

The Court finds that the relevant general causation question is "whether exposure to the benzene-component of gasoline is capable of causing AML." *Henricksen*, 605 F. Supp. 2d at 1156; *accord Castellow v. Chevron USA*, 97 F. Supp. 2d 780, 796 (S.D. Tex. 2000); *cf. Knight*, 482 F.3d at 352 (5th Cir. 2007) (emphasis

---

[18] R. Doc. 44-2 at 8.

[19] R. Doc. 44-3 at 3.

added) ("[T]he fundamental [general causation] question . . . is whether the chemicals [the plaintiffs] were exposed to *and the type of exposures they experienced* cause Hodgkin's lymphoma and bladder cancer."); *Watson*, 797 F. Supp. 2d at 1152 (In toxic tort case involving respiratory problems plaintiff allegedly contracted from exposure to microwave popcorn containing the chemical diacetyl, the court found that the "substance at issue" for purposes of general causation was "vapors from butter flavoring containing diacetyl.").

Defendants have offered no stipulation regarding the toxicity of gasoline or the toxicity of benzene as a component of gasoline. Accordingly, Plaintiff is required, on summary judgment, to submit expert opinion evidence on the issue of general causation. *See Seaman v. Seacor Marine LLC*, 326 Fed. App'x 721, 723 (5th Cir. 2009) (per curiam) (In a toxic tort suit, the plaintiff "cannot expect lay fact-finders to understand medical causation; expert testimony is thus required to establish causation."). This she has not done. Accordingly, her motion for partial summary judgment on the issue of general causation fails.[20]

---

[20] Although she has not submitted any expert opinion evidence, Plaintiff submits various government and industry publications and scientific studies in support of her motion. R. Doc. 28-1 at 5-18; R. Doc. 51 at 4-5. Defendants object to the admissibility of these exhibits on various grounds. R. Doc. 44-5 at 2-15. Because Plaintiff's summary judgment argument regarding general causation fails regardless of whether her exhibits are

B.   *Plaintiff Fails to Show That There Is No Genuine Dispute on the Issue of Defendants' Knowledge.*

The second issue on which Plaintiff seeks summary judgment is whether, before 1958, Defendants knew that benzene exposure could cause leukemia in humans. Putting aside the issue of whether Plaintiff has framed this question properly,[21] the Court finds that there is a genuine factual dispute on this issue and that, accordingly, summary judgment is inappropriate.

In support of her argument, Plaintiff presents a handful of documents pre-dating 1958.[22] These documents comprise letters and reports directed to and from Defendants, as well an institutional report on benzene of which Defendants were likely aware.[23] They

---

admissible, the Court need not, and does not, rule on their admissibility at this time.

[21] *See* R. Doc. 44 at 12 ("[T]he question should be: What was known about the carcinogenicity of *gasoline*?") (emphasis added).

[22] *See* R. Doc. 28-7 (1948 American Petroleum Institute Toxicological Review of benzene); 28-23 (1943 report to Shell from M.H. Soley of the University of California Medical School); R. Doc. 28-24 (1943 memorandum from a Shell employee, transmitting Soley's report); R. Doc. 28-25 (1950 memorandum from C.H. Hine, a Shell consulting toxicologist); R. Doc. 28-27 (1953 letter from W.E. Kuhn, a Texaco employee); R. Doc. 28-28 (1954 letter from Allan Dooley, another Texaco employee, responding to Kuhn's letter). Plaintiff also offers two later documents: a 1964 publication by the U.S. Department of Health, Education, and Welfare; and a 1973 memorandum from Shell's medical director. R. Docs. 28-9; 28-26; *see* R. Doc. 28-1 at 20, 21. Because these documents post-date 1958 by six and fifteen years, respectively, they do not support Plaintiffs' argument that Defendants knew, by 1958, that benzene could cause leukemia.

[23] The record establishes that Texaco, at least, was aware of this report. *See* R. Doc. 28-28 at 2.

10

include conclusory statements and/or anecdotal evidence concerning benzene toxicity.[24] The Court finds that the documents indicate that Shell and Texaco, at least, were aware, before 1958, that benzene exposure was associated with development of leukemia. The documents fail to establish, however, that Defendants knew of a causal relationship between benzene exposure and leukemia, or that the scientific community reached a consensus on this issue before 1958. In his affidavit, Dr. Pyatt states that there was "not a single quantitative epidemiology study that demonstrated an increased risk of AML among benzene-exposed workers published by 1958."[25] He further states that,

> [e]ven in the 1960s, it was not understood nor fully recognized how high-dose benzene exposure, something that kills bone marrow cells, could result in a proliferating population of these same cells as in AML. While there were certainly case-reports published by this time, the hypothesis that benzene exposure could cause AML was not widely accepted. This was compounded by the complete absence of quantitative epidemiological evidence regarding benzene and AML in the literature and by the absence of a reliable animal model of benzene-induced leukemia in experimental animals.[26]

According to Dr. Pyatt, "quantitative epidemiology studies regarding leukemia risk associated with benzene exposure" began

---

[24] *See* R. Doc. 28-7 at 4; R. Doc. 28-23 at 4; R. Doc. 28-25 at 4; R. Doc. 28-27 at 2.

[25] R. Doc. 44-2 at 2.

[26] *Id.* at 10-11.

to appear in the scientific literature "[b]y the mid to late 1970s."[27]

The Court finds that Dr. Pyatt's affidavit creates a genuine issue of fact as to whether, before 1958, Defendants actually knew that benzene exposure could cause leukemia. The affidavit indicates that, as late as the 1960s or even the early 1970s, there was no consensus in the scientific community that benzene exposure could cause AML. Thus, while the documents Plaintiff proffers indicate that Defendants were aware of an association between benzene exposure and AML before 1958, there remains a genuine question of fact whether they actually knew at that time that benzene exposure could cause AML. The Court finds that summary judgment on the issue of Defendants' knowledge is not warranted.

C. *Plaintiff Satisfies Her Burden on the Limited Factual Issue of Whether Defendants Failed to Warn of the Dangers of Benzene Before the Late 1970s.*

The third issue on which Plaintiff seeks summary judgment is whether, before the late 1970s, Defendants failed to warn users that their products contained benzene and that benzene exposure could cause leukemia. This is a pure factual question. As the Court understands Plaintiff's motion, she does not seek summary judgment on the question of whether Defendants had a duty to warn

---

[27] *Id.* at 11.

users that their products contained benzene or that benzene exposure could cause leukemia. Rather, she asks the Court to grant summary judgment on the limited issue of whether Defendants in fact provided such warnings before the late 1970s.

The Court finds that Plaintiff is entitled to summary judgment on this limited factual issue. Plaintiff has produced evidence indicating that, in the 1970s and early 1980s, Defendants issued generalized warnings against exposure to vapor from their benzene-containing products but did not specifically warn users that those products contained benzene or that benzene could cause leukemia.[28] At oral argument, Defendants conceded that benzene warnings were not federally mandated until the 1980s and that they began including warnings regarding benzene toxicity on Material Safety Data Sheets for gasoline at that time. Defendants have not shown, or argued, that before the late 1970s they issued warnings that gasoline contains benzene and that benzene exposure may cause leukemia. Accordingly, the Court finds that, before the late 1970s, Defendants did not warn users that their gasoline products contained benzene or that benzene

---

[28] *See* R. Doc. 28-30 at 2 (1971 Shell Material Data Safety Sheet for Super Shell Gasoline; warns against "breathing of vapor"); R. Doc. 28-37 at 2 (1983 Gulf Oil Material Safety Data Sheet for Good Gulf Leaded Gasoline; warns against "prolonged or repeated contact with the skin or breathing or vapors, mists or fumes"); R. Doc. 28-39 at 9-10 (1975 Texaco document detailing precautionary labels for its products; gasoline labels warn against "repeated or prolonged contact with skin or breathing of vapors").

exposure could cause leukemia. The Court emphasizes, however, that at this time Plaintiff has not shown that Defendants had a duty to issue such warnings during the years Bernard Burst worked as a gas station attendant.

**IV. Conclusion**

For the foregoing reasons, Plaintiff's motion for partial summary judgment is DENIED IN PART and GRANTED IN PART. The Court finds, on summary judgment, that before the late 1970s Defendants did not warn users that their gasoline products contained benzene or that benzene can cause leukemia. The Court DENIES summary judgment on all other issues raised in Plaintiff's motion.

New Orleans, Louisiana, this __8th__ day of August, 2014.

_____*Sarah Vance*_____
**SARAH S. VANCE**
**UNITED STATES DISTRICT JUDGE**

14