UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| YOLANDE BURST, individually | * | CIVIL ACTION NO. 14-00109 |
| and as the legal representative of | * | |
| BERNARD ERNEST BURST, JR. | * | SECTION "R" |
| Plaintiffs | * | |
| | * | |
| VERSUS | * | CHIEF JUDGE VANCE |
| | * | |
| SHELL OIL COMPANY, *ET AL.*, | * | MAGISTRATE WILKINSON |
| Defendants | * | |

------------------------------------------------------------------------------------------------------------

**DEFENDANTS CHEVRON U.S.A. INC., TEXACO INC. AND SHELL OIL COMPANY'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE PLAINTIFF'S EXPERTS ROBERT J. HARRISON AND PETER INFANTE**

Defendants Chevron U.S.A. Inc., Texaco Inc. and Shell Oil Company respectfully request that the Court grant their Motion to Strike Plaintiff's experts Robert J. Harrison and Peter Infante because their opinions, reports and testimony are based in part on the inadmissible testimony and opinions of Plaintiff's exposure experts, Richard Miller and David Mitchell and because their opinions, reports and testimony do not meet the necessary reliability and relevance requirements of Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and are therefore inadmissible.

**I.
INTRODUCTION**

In this wrongful death toxic tort case, Plaintiff Yolande Burst claims that her husband, Bernard Burst Jr., developed acute myeloid leukemia ("AML") as a result of exposure to benzene while working intermittently as a service station attendant from 1958 through 1971.[1] The only source of benzene exposure to Mr. Burst claimed by Plaintiff is gasoline to which Mr. Burst was allegedly exposed in performing his attendant and mechanic duties at service stations.

---

[1]   Plaintiff's Original Complaint  (REC. DOC. NO. 1 at ¶ 7).

On April 9, 2014, Plaintiff filed her Motion for Partial Summary Judgment and Memorandum in Support of that Motion asking this Court to grant a summary judgment finding, among other things, that "benzene can cause AML (Acute Myeloid Leukemia) in humans," an issue described by Plaintiff as the "general causation" question in this case. That issue was neither disputed by Defendants,[2] nor relevant to any issue involved in this case, since it is undisputed that if Bernard Burst was exposed to benzene, it was only because benzene was contained in gasoline.[3] The Court's "Order and Reasons" dated August 8, 2014 was unequivocal in finding that:

> the proper general causation question in this case is whether exposure to gasoline containing benzene can cause leukemia, not whether exposure simply to benzene can cause leukemia.[4]

Yet, Plaintiff and her retained experts have ignored the Court's ruling and continue in their misguided efforts to prove that exposure to benzene, rather than gasoline which contains benzene, can cause leukemia. In doing so, Plaintiff's causation expert witnesses ignore, not only the Court's ruling on the relevant general causation issue in this case, but also the substantial body of scientific literature related to the health effects of exposure to gasoline relevant to the exact general causation question involved in this case. Moreover, Plaintiff's experts do not contest the

---

[2]  To avoid expending substantial fees and costs, not to mention wasting this Court's limited resources on a question which is not relevant in this case, Defendants offered a limited stipulation regarding the undisputed, but irrelevant fact that exposure to very high levels of benzene, not benzene in gasoline, is a known cause of some types of AML.

[3]  As this Court's Order reflects, "[a]t oral argument, Plaintiff's counsel clarified that Plaintiff is alleging that her husband was exposed to gasoline containing benzene, not to pure benzene." (REC. DOC. NO. 63 at p. 3). Plaintiff's expert Dr. Robert Harrison confirmed that Mr. Burst's only exposure to benzene was from benzene contained in gasoline while pumping gas and washing parts. EXHIBIT A, Deposition of Robert Harrison ("HARRISON DEPOSITION") at p. 38:3-7. Likewise, Plaintiff's expert, Peter Infante testified that Mr. Burst was exposed to benzene as a constituent of gasoline. EXHIBIT B, Deposition of Peter Infante ("INFANTE DEPOSITION") at p. 43:2-17.

[4]  REC. DOC. NO. 63 at p. 7.

fact that not a single regulatory or advisory body has found that exposure to gasoline is a human carcinogen.[5]

The position taken by Plaintiff's expert, Peter Infante in this case is particularly troublesome given that he offered virtually identical opinions to those he offers in this case, in the *Henricksen* case. Infante's opinions in *Henricksen* were based on the same scientific literature upon which he claims to rely in this case. The trial court in *Henricksen* found that:

> None of the studies relied upon have concluded that gasoline has the same toxic effect as benzene, and none have concluded that the benzene component of gasoline is capable of *causing* AML. The studies relied upon by Plaintiffs make clear that the connection between gasoline or the benzene component of gasoline and AML is at this point in time only a hypothesis in need of further investigation. Based upon the court's review of these studies Plaintiffs' experts can only reliably attest to gasoline exposure as a theoretical or possible cause, not a probable cause of Henricksen's AML.

*Henricksen*, 605 F.Supp.2d at 1176.[6] Interestingly, by way of example, Dr. Infante attempts in his testimony in this case to use only a part of the study results of a 1997 Nordic study authored by Lynge.[7] The *Henricksen* Court wrote that:

> All of the experts have pointed out the single largest study of service station workers, *Lynge* et al. (1997) (which is not part of the record), which showed there

---

[5] In *Henricksen v. Conoco Phillips Co.*, 605 F. Supp. 2d 1142 (E.D. Wash. 2009), A case remarkably similar to the present case, United States District Judge Quackenbush excluded the evidence offered by Plaintiff's expert, Peter Infante:

> not[ing] that a large number of sources including the International Agency on Research on Cancer (IARC), the U.S. EPA, OSHA, and the Agency for Toxic Substances and Disease Registry have also reviewed this body of literature and published statements concluding that there is inadequate evidence to conclude gasoline is a carcinogen.

*Id*. at 1153-1154.

[6] The *Henricksen* Court cited two other courts which reached the same general conclusion regarding the lack of scientific evidence that gasoline containing benzene causes leukemia. *Id*. (citing *Castellow v. Chevron USA,* 97 F.Supp.2d 780, 787 (S.D.Tex.2000) *and Parker v. Mobil Oil Corp.,* 7 N.Y.3d 434, 824 N.Y.S.2d 584, 857 N.E.2d 1114 (2006)).

[7] INFANTE DEPOSITION at pp. 128:12-133:7.

>was no statistically significant increased risk of AML among the 19,000 gasoline attendants from the nordic countries.

*Id*. at 1173.

Similarly, the opinions and testimony of Plaintiff's expert, Robert Harrison address the wrong general causation question. Harrison's report in this case quoted this Court's ruling on Plaintiff's Motion for Summary Judgment pertaining to warnings, a topic on which Harrison has not been designated and does not intend to testify.[8]  Yet, Harrison did not refer to (nor apparently even recall) that part of the Court's order stating that the "proper general causation question in this case is whether exposure to gasoline containing benzene can cause leukemia, not whether exposure simply to benzene can cause leukemia," the very topic on which Harrison has been designated and does intend to testify.[9]

Harrison acknowledges that all gasoline contains some benzene and that there are many epidemiologic studies in which workers were exposed to gasoline,[10] and the hematologic effects, if any, of such exposures were studied.[11] Yet, Harrison "was not prepared to answer" the general causation question set out by this Court when asked to "name a single study in which workers exposed to gasoline developed hematologic malignancies at a higher rate, relative risk or odds ratio. . . than the general population or the control group."[12] Similarly, Harrison did not know whether the U.S. EPA, the

---

[8]  HARRISON DEPOSITION at p. 16:4 – 23.

[9]  *Id*. at pp. 16:24 – 17:21.

[10]  *Id*. at pp. 22:23-23:3.

[11]  *Id*. at p. 23:4 – 9.

[12]  *Id*, p. 24, ll. 1 – 13.

International Agency for Research on Cancer ("IARC") or the U.S. Agency for Toxic Substance Disease Registry (ATSDR)(U.S. Department of Public Health) had concluded that gasoline containing benzene was a human carcinogen.[13] Similarly, Infante acknowledged that "in 1988, having reviewed the available literature at that time, the International Agency for Research on Cancer determined that there was not sufficient scientific evidence to conclude that gasoline causes leukemia" and that "the ATSDR in June of 1995 specifically stated that there was not sufficient scientific evidence to conclude that gasoline causes leukemia."[14]

As the affidavits of defense experts, Dr. Natelson and Dr. Pyatt set out, none of those agencies or advisory bodies has found adequate evidence that gasoline which contains benzene is a human carcinogen.  In fact, Harrison relied on the IARC Monograph on benzene but did not even know that IARC had published a specific Monograph on gasoline, because he "didn't consider it particularly relevant.[He] was focusing on benzene."[15] Likewise, Harrison did not review the ATSDR on gasoline which he agreed "evaluates all of the evidence, the epidemiology, the case reports, the animal data, the mechanistic data [to] reach some conclusion about whether or not it is – it has certain health effects, including cancer."[16]

---

[13]   HARRISON DEPOSITION at pp. 25:23 –32:17.

[14]   INFANTE DEPOSITION at pp, 10:12 – 17; 12:22 – 24.

[15]   HARRISON DEPOSITION at p. 27:5 – 11.

[16]   *Id.* at pp. 31:16-32:17.

Finally, Harrison was completely unfamiliar with the various hematologic disorders suffered by Mr. Burst, several of which are risk factors for AML.[17] The evidence provided by Dr. Natelson's affidavits filed in this case in regard to potential alternative causes or risk factors for Mr. Burst's AML is undisputed by either Infante or Harrison in this record.

The affidavits of Defendants' experts, Dr. Ethan Natelson and Dr. David Pyatt supporting Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment and their supplemental affidavits in support of this Motion to Exclude recite the scientific literature regarding gasoline exposure and in the case of Dr. Natelson's affidavits, the potential alternative causes of Mr. Burst's AML, specifically, his other preceding hematologic disorders, his advanced age or unknown causes.  Plaintiff cannot meet her burden on general causation. Therefore, any opinions regarding specific causation are also inadmissible.  *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) ("Evidence concerning specific causation in toxic tort cases is admissible only as a follow-up to admissible general-causation evidence.")

## II.
## DAUBERT ADMISSIBILITY REQUIREMENTS

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the United States Supreme Court enunciated a two-prong test for the admissibility of expert testimony:

> Faced with a proffer of expert scientific testimony, . . . the trial judge must determine at the outset, pursuant to Rule 104(a), whether the experts is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.  This entails a preliminary assessment of **whether the reasoning or methodology underlying the testimony is scientifically valid** and of whether that reasoning or methodology properly can be applied to the facts in issue.[18]

---

[17]   HARRISON DEPOSITION at pp. 48:17- 56:15.

[18]   *Daubert*, 509 U.S. at 592. (emphasis supplied)

The first prong of the test set forth in *Daubert* involves determination of whether the proffered expert testimony is based on a methodology that is "scientific" and, therefore reliable.[19]  The trial court's focus, as the Supreme Court directed in *Daubert*, "must be solely on principles and methodology, not on the conclusions that they generate."  *Id.* at 595.  The court is required to "assess carefully the methodology, reasoning, or technique employed by the expert." *Wynacht v. Beckman Instruments, Inc.*, 113 F. Supp. 2d 1205, 1207 (E.D. Tenn. 2000).  "The function of this inquiry is to distinguish between two types of expert opinions.  'An expert opinion that is based on scientifically valid principles will satisfy [rule 702 of the Federal Rules of Evidence]; an expert's subjective belief or supported speculation will not.'"  *Id*.  It is the role of the trial court "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

The Supreme Court in *Daubert* listed four factors among the many that can bear on a trial court's inquiry of the soundness of scientific methodology:  (1) whether the theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error and the existence and maintenance of standards; and (4) whether the theory or technique used has been generally accepted.  *Id.* at 593-94.  Not each of the above-enumerated factors is "equally applicable (or applicable at all) in every case."  *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 43 F.3d 1311, 1316 (9th Cir. 1995) ("*Daubert II*").

---

[19] According to the court in *Daubert*: the subject of an expert's testimony must be "scientific . . . knowledge."  The adjective "scientific implies a grounding in the methods and procedures of science.  Similarly, the word "knowledge" connotes more than subjective belief or unsupported speculation. *Daubert*, 509 U.S. at 10.

The second prong of the *Daubert* test involves a determination of relevancy or "fit":  Is the proffered expert testimony sufficiently tied to the facts in issue that it will aid the jury in resolving the factual dispute."  *Id*. at 591; *see also,* FED. R. EVID. 702.  The Supreme Court recognized in *Daubert* that "scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes."  *Id*. at 591.  <u>Both</u> prongs of the test that the Supreme Court announced in *Daubert* must be satisfied before the proffered expert testimony may be admitted.  *Id*.  (Trial court must assess "whether the reasoning or methodology underlying the testimony is scientifically valid <u>and</u> . . . whether that reasoning or methodology properly can be applied to the facts in issue.") (emphasis supplied); s*ee also O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1106 n.17 (7th Cir.), *cert. denied*, 512 U.S. 112 (1994). In this case, Plaintiff's causation experts ignore the large body of scientific evidence regarding exposure to gasoline and instead support their opinions with the scientific literature on pure benzene which is simply not relevant to Mr. Burst's claimed exposures.

The court need not admit an expert opinion that is connected to the underlying data "only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  "Something doesn't become scientific knowledge just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were derived by the scientific method be deemed conclusive." *Henricksen*, 605 F. Supp. 2d at 1153-1154.[20] The fact that Plaintiff's experts Infante and Harrison say that the benzene literature is relevant to Mr. Burst's work with gasoline does not make it so.

In summary, "*Daubert* sharpens the focus on the validity of an expert's reasoning and methodology, and on the reliability and relevancy of the conclusions an expert reaches.  It also

---

[20]  As set out above, *Henricksen* was a case in which the scientific evidence offered by Plaintiff's expert, Peter Infante were excluded.

makes explicit a trial judge's obligation to hold experts to the standards of good scientific practice."[21] It is only after a party shows the reliability of the scientific evidence pursuant to the standards set forth in *Daubert* that the evidence may be admitted by the trial court.

## III.
## PLAINTIFF'S EXPERTS' OPINIONS ON SPECIFIC CAUSATION ARE UNRELIABLE

If Plaintiff fails to sustain her burden on general causation, any opinions of her experts regarding specific causation are also inadmissible.[22] After establishing general causation, Plaintiff must prove that the Mr. Burst was exposed to a sufficient level of gasoline containing benzene to have caused his AML to support burden on specific causation.[23]

## IV.
## CONCLUSION

For these reasons, Defendants respectfully requests that this Court grant its motion and enter an order excluding the opinions and testimony of Plaintiff's experts Robert J. Harrison and Peter Infante.

                                          Respectfully Submitted

                                          **FORMAN PERRY WATKINS KRUTZ &TARDY LLP**

                                          /s/ Tim Gray
                                            Tim Gray (T.A.) (Bar No. 31748)

---

[21] *See* BERT BLACK & PATRICK LEE, *Expert Evidence, A Practitioner's Guide to Law, Science, and the FJC Manual* (1997) p.141.

[22] *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) ("Evidence concerning specific causation in toxic tort cases is admissible only as a follow-up to admissible general-causation evidence.")

[23] *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996) ("Scientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case."); *Parker v. Mobil Oil Corp.*, 7 N.Y.3d 434, 448 (N.Y. 2006) ("It is well-established that an opinion on causation should set forth a plaintiff's exposure to a toxin, that the toxin is capable of causing the particular illness (general causation) and that plaintiff was exposed to sufficient levels of the toxin to cause the illness (specific causation).

   tgray@fpwk.com
   Lea Ann Smith (Bar No. 35329)
   lasmith@fpwk.com
   701 Poydras Street, Suite 4350
   New Orleans, LA 70139
   Telephone: (504) 799-4383
   Facsimile: (504) 799-4384

   AND

   Robert Scott, *admitted pro hac vice*
   TX State Bar No. 17911800
   Email: rscott@blankrome.com
   Marquel S. Jordan, *admitted pro hac vice*
   TX State Bar No. 24048616
   Email: mjordan@blankrome.com
   BLANK ROME LLP
   700 Louisiana, Suite 4000
   Houston, Texas 77002
   (713) 228-6601
   (713) 228-6605 Fax

**Counsel for Defendants Chevron U.S.A. Inc. and Texaco Inc.**

AND

**JOHNSON GRAY McNAMARA, LLC**

 /s/ Mary S. Johnson, T.A.
 Mary S. Johnson, T.A. (Bar #17647)
 msj@jgmclaw.com
 Ingrid M. Kemp (Bar #30575)
 imk@jgmclaw.com
 21357 Marion Lane, Suite 300
 Mandeville, Louisiana  70471
 Telephone: (985) 246-6544
 Facsimile:  (985) 246-6549

and

**JOHNSON GRAY McNAMARA, LLC**
 /s/ S. Suzanne Mahoney
 S. Suzanne Mahoney (Bar #24536)
 ssm@jgmclaw.com
 650 Poydras Street, Suite 1201

      New Orleans, Louisiana 70130
      Telephone: (504) 525-4649

and

**REED SMITH, LLP**
 /s/ Stan Perry
 Stan Perry, *pro hac vice*
 SPerry@ReedSmith.com
 Rhonda R. Caviedes, *pro hac vice*
 RCaviedes@ReedSmith.com
 811 Main Street, Suite 1700
 Houston, Texas 77002
 Telephone: (713) 469-3847

**Counsel for Defendant Shell Oil Company**

## CERTIFICATE OF SERVICE

 I certify that a true and correct copy of the foregoing instrument was filed electronically with the Clerk of Court, using the CM/ECF system on this 2nd day of December 2014. Notice of filing will be sent to all counsel of record by operation of the Court's electronic filing system

      /s/ Tim Gray

      Tim Gray